UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| REBECCA OWEN, | : | Case No. 3:16-cv-504 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Rebecca Owen brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on July 23, 2013, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" beginning May 1, 2013. She was thirty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has at least a high school education. *See* 20 C.F.R. §§ 404.1564(b)(4), 416.964(b)(4).[2]

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that she has a lot of pain. (Doc. #6, *PageID* #s 62-63). "A lot of [her] pain is from the waist down." *Id.* at 63. She has had lower back pain for three or four years. *Id.* She described this pain as "like a pinching, just uncomfortable." *Id.* On a scale from one to ten, she would place her pain at six. *Id.* For her pain, she takes ibuprofen three times a day; uses a massage chair for about an hour as often as every day; and takes hot baths. *Id.* at 63-64.

Plaintiff described her hip pain as uncomfortable and "[m]aybe a throbbing." *Id.* She would rate the pain at five or six on a ten-point scale. *Id.* She also has pain through her legs and knees. *Id.* at 65. That pain is usually an eight. *Id.* Additionally, she occasionally has swelling and "[a] lot of popping whenever I move my legs. Cracking, popping." *Id.*

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

Plaintiff has fibromyalgia. *Id.* at 75. She has pain on a daily basis and tense muscles. *Id*. She has tenderpoints in her shoulders, neck, part of her back, legs, and arms. *Id.* at 76. She also has sciatica. *Id*. She explained, "it causes a pinching and burning feeling on whatever side it's on, and it's swelling. And pain shoots down my leg. So, every time that I go to walk, whichever side it's on, it causes a lot of pain." *Id*.

Plaintiff has diabetes. *Id.* at 65. She tests her blood glucose every other day and takes pills for it. *Id*. She has high blood sugar a couple times a week. *Id.* at 73. When her sugar is high, she gets a headache or starts sweating. *Id*. If she takes her medication, "it usually takes about an hour to come down." *Id*. She experiences neuropathy in her hands and feet. *Id.* at 66. It causes numbness and tingling in her feet "pretty much all of the time" and in her hands three times a week. *Id.* at 66, 73. In her hands, the numbness usually lasts a few hours. *Id.* at 73.

Plaintiff has had some problems with her immune system. *Id.* at 66. She explained, "if anybody is sick, I'm going to catch it." *Id.* at 67. She is also always tired. *Id*. She spends most her day lying down. *Id*. She gets bronchitis three times a year. *Id.* at 80. Every time she gets it, she is usually in bed for a couple weeks. *Id*.

She also has kidney stones—one every two to three months. *Id.* at 80. They cause pain in her kidneys and lower back, nausea, and sometimes vomiting. *Id*. When she has them, her pain is at ten. *Id.* at 81. She typically passes it in three days or it has to be surgically removed. *Id*.

3

Plaintiff has Cushing's syndrome. *Id.* at 77. Her symptoms include thinning in her legs and hips and discoloration—"it gets red, white, purple, spidery discoloration." *Id.* She has it a few times a week and lasts all day. *Id.* at 78.

Plaintiff has been diagnosed with an anxiety disorder and depression. *Id.* at 67. Her "anxiety is, kind of, under control," but she still has shakiness and struggles with being around people." *Id.* at 68. She only leaves her home "when [she] absolutely [has] to." *Id.* at 69. Leaving for the hearing was the first time she left home in a couple weeks. *Id.* She can leave the house by herself but she usually has her husband take her anywhere she needs to go. *Id.* She takes Klonopin for depression. *Id.* at 68. However, she still has crying spells three or four times a week. *Id.* The spells usually last an hour. *Id.* at 74. She also has trouble focusing on reading. *Id.* at 68. When Plaintiff gets "really angry[,]" she sometimes pulls out her hair. *Id.* at 78. It happens about once a week. *Id.* at 79.

Plaintiff sometimes hears things—usually music or people talking—that are not there. *Id.* at 78. She experiences this almost every night. *Id.* When she hears things, she cannot sleep. *Id.* at 79. When she cannot sleep, it causes her anxiety. *Id.*

Plaintiff testified that she believes that she is not able to work a full-time job because of "all the pain that [she has]." *Id.* at 72. "And whenever I'm around people, I get sick. Even with doctor notations, the amount of work that I miss, I'm not a reliable person. And I end up losing my job." *Id.* She has been let go from every job (except one) that she has had because she was absent so often. *Id.*

Plaintiff lives in an apartment with her husband and cats. *Id.* at 61, 71. On a typical day, she wakes up at 7:30 or 8:00 a.m., and "my main priority is the cats. Just make sure they're taken care of. And then, most of the day I lay around, watch TV." *Id.* at 72.

She has a driver's license and is able to drive but "usually" lets her husband drive. *Id.* at 62. She drives "maybe once or twice a week." *Id.* Plaintiff goes to the grocery store with her husband a couple times a month. *Id.* at 79. She has to use a cart to hold herself up or a motorized chair. *Id.*

Plaintiff estimated that she could lift maybe ten pounds, stand in one spot for a couple minutes, walk for a couple blocks, and sit for twenty to thirty minutes. *Id.* at 70. She has difficulty going up and down stairs. *Id.* She is able to take care of her personal needs. *Id.* She does not usually do any household chores. *Id.* at 71.

### B. Medical Opinions

#### i. Gordon A. Harris, Ph.D.

Dr. Harris examined Plaintiff on October 30, 2013. *Id.* at 1471-75. He diagnosed depressive disorder, not otherwise specified (NOS), mild; anxiety disorder, NOS, mild; poly-substance abuse (reportedly in remission); and somatoform disorder, NOS. *Id.* at 1474. Dr. Harris opined that Plaintiff could understand and carry out instructions. *Id.* at 1475. However, "She did claim to not remember her job history beyond the past few years, but this would appear to represent a lack of effort, rather than a lack of memory." *Id.* She had adequate attention and concentration and normal pace but limited persistence. *Id.* "She appears to have a history of putting forth limited effort, as she did at times during this interview. She also has a history of developing somatic symptoms,

5

likely for secondary gain." *Id.* Plaintiff did not have difficulty performing simple and multistep tasks in maintaining her household. *Id.* He opined Plaintiff's reported anxiety around people was "highly inconsistent" with her job history, as most of her jobs required direct contact with the public and customer service. *Id.* Dr. Harris concluded that Plaintiff "appears to have difficulty coping with the work environment and is likely developing somatic symptoms or coping through the inappropriate use of drugs in the past. She would likely … continue to have these issues if she returns to the workplace." *Id.*

### ii.   Leslie Rudy, Ph.D., & Cindy Matyi, Ph.D.

On November 12, 2013, Dr. Rudy reviewed Plaintiff's records. *Id.* at 93-105. She found that Plaintiff has six severe impairments: other and unspecified arthropathies; other disorders of the gastrointestinal system; affective disorders; anxiety disorders, somatoform disorders; and alcohol, substance addition disorders. *Id.* at 98. She opined Plaintiff had a mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation. *Id*. Dr. Rudy opined that Plaintiff is limited to one to four step tasks in a routine work environment; superficial contact with coworkers, supervisors, and the general public; and a static work environment without strict time demands. *Id.* at 102-03.

Dr. Matyi reviewed Plaintiff's records on February 18, 2014. *Id.* at 123-37. She added one severe impairment—chronic bronchitis—and one non-severe impairment—

6

disorders of back–discogenic and degenerative. *Id.* at 129. She otherwise affirmed Dr. Rudy's assessment. *Id.* at 123-37.

### iii. Steve E. McKee, M.D., & Esberdado Villanueva, M.D.

Dr. McKee reviewed Plaintiff's records on October 8, 2013. *Id.* at 93-105. He opined Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. *Id.* at 205. She could stand and/or walk for six hours in an eight-hour workday and sit for a total six hours. *Id.* She can frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, and scaffolds. *Id.* at 101. Dr. McKee concluded that Plaintiff is not disabled. *Id.* at 105.

On March 10, 2014, Dr. Villanueva reviewed Plaintiff's records. *Id.* at 123-37. He found that due to Plaintiff's frequent bronchitis, she should avoid concentrated exposure to extreme cold and heat; wetness; humidity; and fumes, odors, dusts, gases, poor ventilation, etc. *Id.* at 132-33. He affirmed the remainder of Dr. McKee's assessment. *Id.* at 123-37.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

7

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

8

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since May 1, 2013.

Step 2: She has the severe impairments of mild degenerative disk disease of the lumbosacral spine; diabetes mellitus; a history of leukocytosis; a history of kidney stones; depression; and anxiety.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work …, subject to the following limitations: (1) frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) limited to performing unskilled, simple, repetitive tasks; (5) occasional contact with co-workers, supervisors, and members of the general public; (6) no fast paced production work or jobs involving strict production quotas; and (7) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next."

Step 4: She is capable of performing past relevant work as a prep cook.

9

> Step 5: Although she capable of performing past relevant work, she could also perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 42-50).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 50.

## V. Discussion

Plaintiff contends that the ALJ erred in rejecting her fibromyalgia diagnosis and in failing to adequately consider her kidney stones and obesity.  Further, she asserts that he improperly weighed the opinion evidence and erred in finding that she was not credible.  The Commissioner maintains that substantial evidence supports the ALJ's assessment of Plaintiff's impairments, the medical source opinions, and her credibility.

### A. Medical Opinions

Plaintiff contends that the ALJ erred in failing to explain his assignment of weight to the opinion evidence.  The Regulations require an ALJ to consider and evaluate every medical opinion in the record.  *See* 20 C.F.R. §§ 416.927(b), (c).  In deciding what weight to assign an opinion, an ALJ must consider the following factors:  examining relationship; treatment relationship; supportability; consistency; specialization; and other factors.  *Id.* at (c).  "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."  *Id.* at (e)(2)(ii).

10

In the present case, ALJ Kenyon assigned opinions of the State agency physicians and psychologists "great weight" because they were consistent with the overall medical record. (Doc. #6, *PageID* #47). Although he finds them consistent, the ALJ identifies no evidence that is consistent with their opinions. Further, there is no indication that he considered any of the other factors required by the Regulations. The ALJ's terse assessment of the record-reviewing doctors' opinions constitutes error under the Regulations: "[ALJs] … are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." 20 C.F.R. § 416.927(e)(2)(ii); *see* Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

The ALJ assigned the assessment of Dr. Harris "moderate level weight" but provides no reasons why. The ALJ does not, for example, explain why he gave less weight to Dr. Harris's opinion than he gave the record-reviewing psychologists when, "[g]enerally, [the Social Security Administration] give[s] more weight to the opinion of a source who has examined [a claimant] than to the opinion of a source who has not examined [a claimant]." 20 C.F.R. § 416.927(c)(2). Instead, the ALJ summarizes Dr. Harris's diagnoses and concludes that Dr. Harris "noted some deficits in stress tolerance but these are fully accommodated by the above-captioned residual functional capacity." (Doc. #6, *PageID* #47). The ALJ's failure to provide any reasons for the weight he assigned Dr. Harris's opinion prevents the Court from evaluating whether his decision is supported by substantial evidence and constitutes error under the Regulations and

11

Rulings.  *See Wilson*, 378 F.3d at 546 ("'[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.'  To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory.") (quoting *Mazaleski v. Treusdell,* 562 F.2d 701, 719 n. 41 (D.C. Cir. 1977)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Rebecca Owen was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

    4.       The case be terminated on the Court's docket.

Date:  February 6, 2018                                *s/Sharon L. Ovington*
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).